Marvin **COBB** et al., Petitioners,

v.

The **NATIONAL TRANSPORTATION SAFETY BOARD**, Respondent.

No. 77–1506.

United States Court of Appeals, Ninth Circuit.

Nov. 11, 1977.

Kennedy, Circuit Judge, filed a concurring opinion.

Allan H. McFarland, of Vizzard, Baker, Sullivan & McFarland, Bakersfield, Cal., for appellant.

Michael L. Dworkin, Los Angeles, Cal., for appellee.

Before BROWNING, GOODWIN and KENNEDY, Circuit Judges.

PER CURIAM:

The National Transportation Safety Board (NTSB) suspended petitioners' airman certificates for 180 days. They appeal. We affirm.

The petitioners challenge the sufficiency of the evidence supporting the determination that they had violated section 91.79(c) [1] and 91.9 [2] of the Federal Aviation Regulations, by flying at an impermissibly low altitude over buildings and persons and by flying in a reckless and inherently dangerous manner. Petitioners argue that the operation of their aircraft within 500 feet of structures, vehicles, and persons on the surface was necessary for takeoff from or landing on a permissible landing area, that the prefatory clause of section 91.79(c) exempted them from the minimum altitude requirement, and that as such there were no violations of the Federal Aviation Regulations.

It is conceded that petitioners utilized the diagonal strip connecting runways at the Twenty-Nine Palms Airport as a landing strip and that, in so doing, petitioners' respective aircraft flew within 10 to 60 feet of persons, vehicles, and structures on the surface. Furthermore, it is admitted that the two airport runways were available for use and that use of those runways would not have necessitated similar "low flight." Under the above circumstances, the NTSB adopted the finding of the hearing officer that the diagonal strip was clearly intended as a taxiway and not as a runway and that, given the availability of runways, the cited low flight was unnecessary.

Although there was some conflict in testimony, there was substantial evidence that the diagonal strip was intended as a taxiway and that, despite one or two landings on the strip over a period of years, it was not intended as a runway. Because no need to use the taxiway as a runway was shown, we are in agreement with the NTSB that this low flight was not "necessary" as the term is used in section 91.79(c). Therefore we conclude there was substantial evidence supporting the violation of section 91.79(c).

Likewise, there was substantial separate and independent evidence in support of the 91.9 violation. [3] Although again

---

1. Section 91.79(c), 14 C.F.R. § 91.79(c) (1977), provides:

   Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:

   (c) *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

2. Section 91.9, 14 C.F.R. § 91.9 (1977), provides:

   No person may operate an aircraft in a careless or reckless manner so as to endanger life or property of another.

3. It is sufficient to show careless operation which is potentially or inherently dangerous.

there was some conflicting testimony, there was significant evidence to the effect that the planes in question engaged in "dog-fighting" maneuvers in and around the airport, that the planes barely cleared a power line running in front of the airport, and that fear and apprehension was caused to persons at the airport by petitioners' low flight. The NTSB acted well within its discretion in holding that petitioners operated their planes in a reckless manner in violation of section 91.9.

Petitioners have also argued on appeal that the 180 day suspensions imposed by the NTSB are unwarranted and constitute an abuse of discretion. Although this sanction is more often applied to violations of section 91.79(b) concerning low flight over congested areas, the NTSB has broad discretion in determining the punishment for violations of the regulations. The NTSB is charged with maintaining safety standards; in so doing, the agency is obligated to prevent future violations by those involved and by other similarly situated. *Administrator v. Gulub*, 1 NTSB 1925, 1926 (1972). Because of the nature of the conduct involved, which was characterized as "aggravated" and which produced "an inherent and totally unnecessary hazard," the NTSB did not abuse its discretion in suspending petitioners' certificates for 180 days. A similar degree of misconduct on the ground might well have resulted in a jail term.

AFFIRMED.

KENNEDY, Circuit Judge, concurring:

If Cobb and O'Connor had frightened a group of families on a picnic by an exhibition of speed and by driving recklessly close to them in automobiles, a state court most probably would have suspended their drivers' licenses for a year and in addition imposed a heavy monetary fine, or perhaps a jail term. But Cobb and O'Connor chose airplanes for their reckless conduct and consequently had their licenses suspended for 180 days by the National Transportation

*Haines v. Dept. of Transportation*, 145 U.S. App.D.C. 411, 414, 449 F.2d 1073, 1076 (1971);

Safety Board. They argue that this disciplinary penalty amounts to an abuse of the Board's discretion. That argument is frivolous and presumptuous.

This is not the first time I have been puzzled by the lenient suspension the Board imposes on pilots who willfully endanger the lives and safety of the public, and who frighten others for their own amusement. The only potential abuse of discretion I can detect in these cases is that the Board is too protective of the pilots it regulates. I would have thought that a one-year suspension would be the minimum penalty the Board would consider for the conduct that occurred here, and further that the Board would have referred the matter to the appropriate authorities for criminal prosecution. *See, e. g.*, Cal.Pub.Util.Code § 21407 (West 1965).

*Administrator v. Schoenbachler*, 1 NTSB 682, 686 (1969).