**Lowell G. FERGUSON, Petitioner,**

**v.**

**NATIONAL TRANSPORTATION SAFETY BOARD and Longhorne M. Bond, Administrator, Federal Aviation Administration, Respondents.**

**No. 81–7076.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 1, 1982.

Decided June 2, 1982.

Roger D. Sandack, Sandack & Sandack, Salt Lake City, Utah, for petitioner.

James Sullivan, Los Angeles, Cal., for respondents.

Before WRIGHT, ALARCON and REIN-HARDT, Circuit Judges.

ALARCON, Circuit Judge:

Lowell G. Ferguson appeals the decision of the National Transportation Safety Board (NTSB) to suspend his Airline Transport Pilot Certificate for 60 days for violations of the Federal Aviation Regulations. Ferguson, the pilot-in-command of Western Airlines Flight 44, landed his aircraft without clearance at Buffalo, Wyoming, rather than at the scheduled stop at Sheridan, Wyoming. The NTSB adopted as its own the decision of the Administrative Law Judge (ALJ) affirming the order of suspen-

sion issued by the Administrator of the Federal Aviation Administration (FAA).

Ferguson now requests this court to vacate and set aside the order of the ALJ and the NTSB, or, in the alternative, to remand for further proceedings. Ferguson asserts an affirmative defense under the FAA/NASA Aviation Safety Reporting Program (ASRP Advisory Circular 00–46B), contending: (1) he was entitled to a waiver of punishment because his actions were "inadvertent and not deliberate;" (2) his conduct was not reckless within the meaning of Federal Aviation Regulation § 91.9 (14 C.F.R. § 91.9). Jurisdiction in the United States Court of Appeals for the Ninth Circuit is predicated upon 49 U.S.C. § 1486 (Federal Aviation Act of 1958), 49 U.S.C. § 1903 (Independent Safety Board Act of 1974), and 5 U.S.C. § 701 (Administrative Procedure Act).

In our view, this appeal presents two issues: first, whether the NTSB properly interpreted the phrase "inadvertent and not deliberate" in Advisory Circular 00–46B of the FAA Aviation Safety Reporting Program; and second, whether the NTSB was correct in affirming the ALJ's conclusion from the findings of fact that Ferguson's operation of Western Airlines Flight 44 was reckless within the meaning of Federal Aviation Regulation § 91.9.

We hold that the NTSB did not abuse its discretion in interpreting the Advisory Circular 00–46B. Neither the historical background nor the language of the circular indicates that reckless conduct can be considered "inadvertent and not deliberate" and thus, qualify for a waiver of punishment. We also conclude that the NTSB did not abuse its discretion in affirming the ALJ's conclusion that Ferguson's conduct was reckless. Although Ferguson did not knowingly land his aircraft at the wrong airport, he should have known that his conduct demonstrated a gross disregard for safety and created an actual danger to life and property. Accordingly, we affirm the decision of the NTSB.

## I. FACTUAL BACKGROUND

Ferguson was pilot-in-command of Western Airlines Flight 44 from Los Angeles, California to seven locations, including Las Vegas, Nevada, Denver, Colorado, and Sheridan, Wyoming. Ferguson, with over 12,000 hours of flying experience, had never been found in violation of any Federal Aviation Regulations.

Flight 44 left Los Angeles on July 31, 1979. By the time the flight departed on the leg from Denver to Sheridan, it was 35 minutes behind schedule. The original flight plan would have taken the aircraft from the Denver Air Route Traffic Control Center to the Crazy Woman navigational facility for an instrument landing in Sheridan. Shortly before reaching Crazy Woman, however, control of flight 44 was transferred to Salt Lake Air Route Traffic Control Center (Salt Lake Center). Visibility was unrestricted, and Salt Lake Center offered flight 44 a direct clearance to Sheridan along airway victor 19, which passed directly over an airport in Buffalo, Wyoming. Flight 44 accepted the new plan in order to save time and fuel.

Ferguson handled radio communications as the flight approached Sheridan, and the first officer, James Bastiani, flew the aircraft. Neither Ferguson nor Bastiani had flown into Sheridan before, but each believed the other had. Ferguson reviewed the navigational chart, but failed to note that the Buffalo airport was directly under the aircraft's flight path.

At approximately 10:00 p. m. both Ferguson and Bastiani saw runway lights and commenced a visual approach to what they assumed was the Sheridan Airport. Ferguson did not use available radio navigation aids to make positive identification of the airport. During the approach, flight 44 maintained radio contact with the Sheridan Flight Service Station. Although the Air Traffic Controller in Sheridan informed flight 44 that another aircraft was on final approach, neither Ferguson nor Bastiani inquired further when they were unable to see the other aircraft. Although the airport at Sheridan was equipped with visual

approach slope indicator (VASI) lights, Ferguson did not ask the Sheridan Flight Service Station why the runway before him was not so lighted. In spite of the fact that Ferguson was under an obligation to land the aircraft himself (Western Airlines Flight Operational Manual, ¶ 5.1.2 B), First Officer Bastiani landed the Boeing 737. It was not until the aircraft's landing gear nose wheel sank in the turnoff pad beyond the runway that Ferguson realized that flight 44 had landed in Buffalo instead of Sheridan. The error was confirmed when the jeep that drove up to meet them bore "Piper" insignia rather than the expected Western Airlines logo.

On November 28, 1979 the Administrator of the FAA issued an order of suspension of Ferguson's Airline Transport Pilot certificate for 60 days. The order was subsequently filed as the Administrator's complaint, and charged Ferguson with violation of four sections of the Federal Aviation Regulations: (1) § 91.75(a) (14 C.F.R. § 91.-75, deviating from an air traffic control clearance; (2) § 121.590(a) (14 C.F.R. § 121.590), landing at an airport not certificated under part 139 of the Federal Aviation Regulations; (3) § 121.555(b) (14 C.F.R. § 121.555), landing at an airport not listed in the Western Airlines Operations Specifications; and (4) § 91.9 (14 C.F.R. § 91.9), operating an aircraft in a careless or reckless manner so as to endanger the life or property of another.

An evidentiary hearing was held before an ALJ on June 4, 1980. The ALJ concluded that the evidence in the record supported a finding that Ferguson had violated the sections of the Federal Aviation Regulations as charged. The Administrator's 60-day suspension of Ferguson's Airline Transport Pilot Certificate was affirmed by the ALJ.

Ferguson filed a timely notice of appeal, and on December 9, 1980 the NTSB affirmed the 60-day suspension. On January 7, 1981, Ferguson filed a motion to stay the order with the NTSB. The motion was granted on January 8, 1981, and the order of suspension was stayed pending the disposition of the case by this court.

## II. STANDARD OF REVIEW

Our review of the NTSB decision is limited by the standards set forth in the Administrative Procedure Act, 5 U.S.C. § 706(2). Unless the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), we must affirm. Furthermore, we must give deference to an administrative agency's interpretation of its own regulations. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Sierra Pacific Power Co. v. EPA*, 647 F.2d 60, 65 (9th Cir. 1981); *see also, Bellwood General Hospital v. Schweiker*, 673 F.2d 1043 at 1044 (1982) (administrative interpretation of regulation by agency responsible for promulgating and administering it is controlling unless it is plainly erroneous or inconsistent with regulation.)

It is important to note that in this case Ferguson's conduct is not in dispute. Rather, it is the agency's conclusions drawn from the conduct that are at issue. Ferguson failed to: (1) familiarize himself with the navigational chart depicting the Buffalo airport; (2) land the aircraft himself, as required by Western Airlines Flight Operational Manual (¶ 5.1.2 B); (3) use navigational aids such as the VOR/DME,[1] the Instrument Landing System (ILS,[2] and the Monarch low frequency beacon associated

---

1. VOR is Very high frequency Omni Range; DME is Distance Measuring Equipment. When the receiver is tuned to a navigation facility, the aircraft's direction and distance to the facility are indicated on a cockpit display.

2. The ILS is a precision approach aid, which provides both direction ("localizer") and descent ("glide slope") information on a cockpit display. The ILS could have been used to identify the Sheridan airport. The additional time

with the ILS[3] to identify the airport; and (4) note visual indications that he was landing at the wrong airport.

The NTSB, affirming the FAA's interpretation of the scope of Advisory Circular 00–46B, determined that Ferguson was not entitled to a waiver of punishment under the "inadvertent and not deliberate" provision of the circular. The NTSB also concluded from the findings of fact that Ferguson's conduct was reckless within the meaning of Federal Aviation Regulation § 91.9 (14 C.F.R. § 91.9). Because both issues in this case center on agency interpretations of regulations and conclusions drawn from findings of fact, this court will review the decision of the NTSB under the abuse of discretion standard, giving deference to the agency's interpretation of its own regulations. *Udall*, 380 U.S. at 16, 85 S.Ct. at 801; *Sierra Pacific Power Co.*, 647 F.2d at 65.

### III. THE SCOPE OF ADVISORY CIRCULAR 00–46B

We first consider Ferguson's claim that he is entitled to a waiver of punishment under the terms of Advisory Circular 00–46B, which was issued on June 15, 1979, and was in effect at the time flight 44 landed at the Buffalo Airport. Unlike the two preceding Advisory Circulars (issued in 1975 and 1976), 00–46B does not include an express exclusion of reckless conduct from the scope of immunity. It does, however, provide for a waiver of punishment if the violation was "inadvertent and not deliberate."

Ferguson contends that the removal of the express exclusion of reckless conduct from the scope of immunity evidences the intent of the FAA to waive disciplinary action in cases where conduct was reckless—as long as the conduct was also "inadvertent and not deliberate." He also suggests that this court should adopt what he terms a "lay interpretation" of "inadvertent." Under Ferguson's definition, "inadver-

vertent" is synonymous with "not deliberate." Thus, violations that are not deliberate are also inadvertent.

The NTSB responds that the history of the FAA Aviation Safety Reporting Program (ASRP) indicates that the intent of the FAA was to limit rather than increase the number of instances in which a waiver of punishment would be afforded. Because reckless conduct had been expressly excluded in the past, the NTSB asserts that it would not be consistent with the FAA's intent to establish a new waiver for reckless conduct. Furthermore, the NTSB maintains that the phrase "inadvertent and not deliberate" inherently excludes reckless conduct.

### A. *The Administrative Interpretation*

■ In 1979 the FAA Administrator promulgated Advisory Circular 00–46B, which modified the ASRP to provide for disciplinary action against violators whenever information about the violation is obtained from an independent source. 44 Fed.Reg. 18129. Waiver of punishment is granted if:

(1) The violation was inadvertent and not deliberate;

(2) The violation did not involve a criminal offense, or accident, or action under section 609 of the Act which discloses a lack of qualification or competency, which are wholly excluded from this policy;

(3) The person has not been found in any prior FAA enforcement action to have committed a violation since the initiation of the ASRP of the Federal Aviation Act or of any regulation promulgated under that Act; and

(4) The person proves that within 10 days after the violation, he or she completed and delivered or mailed a written report of the incident or occurrence to NASA under ASRS. Advisory Circular 00–46B, ¶ 9c(1)–9c(4).

Although the language of the Advisory Circular 00–46B does not expressly exclude

---

required to use the ILS would have been only ten or fifteen seconds.

3. The Sheridan airport had a Monarch low frequency radio beacon associated with the ILS, which could have identified the airport.

reckless conduct from the scope of immunity, the FAA Administrator's notice explains:

> In addition, where a timely report is filed, if the FAA has not initiated its investigation within 90 days after the incident, the Administrator will waive the taking of disciplinary action against the person filing the report; *provided the incident does not involve reckless operations*, gross negligence, willful misconduct, a criminal offense, or an accident. 44 Fed.Reg. 18128–18129 (emphasis added).

Thus, the Administrator has determined that the circular, as presently formulated, excludes reckless conduct from the scope of immunity.

"The administrative interpretation of a regulation by the agency responsible for promulgating and administering it is 'controlling . . . unless it is plainly erroneous or inconsistent with the regulation.' *Immigration and Naturalization Service v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1526, 23 L.Ed.2d 101 (1969), *quoting Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)." *Bellwood General Hospital* at 1044. We first examine whether this interpretation is clearly erroneous. An examination of the history of the ASRP reveals that the Administrator's interpretation of the scope of the circular is correct.

The FAA Administrator, in a notice at 44 Fed.Reg. 18128–18129 (1979), indicated that the FAA established the ASRP in 1975 in order to obtain information that would aid in discovering and preventing unsafe conditions in the National Aviation System. Much of this information had remained unreported because pilots and other involved individuals feared disciplinary action. *Id.* Therefore, the first Advisory Circular 00–46, promulgated in 1975, included a waiver of certain disciplinary actions in return for a timely written report. The 1975 circular, however, expressly stated that the waiver

applied "*except with respect to reckless operations*, criminal offenses, gross negligence, willful misconduct and accidents." *Id.* ¶ 3c (emphasis added).

In 1976, the FAA Administrator modified the ASRP to provide for submission of reports directly to the National Aeronautics and Space Administration (NASA). Advisory Circular 00–46A (1976). The NASA system was designed to guarantee absolute confidentiality and thus, to encourage reporting. 44 Fed.Reg. 18128 (1979). An important provision of the 1976 circular stated that disciplinary action could not be taken against a violator unless the FAA approached NASA to inquire about a particular incident within 45 days of its occurrence. Advisory Circular 00–46A, ¶ 6a(1). Reckless conduct was expressly excepted from the provision: "Disciplinary action may be taken in such cases, however, on the basis of information obtained independently of the Aviation Safety Report." *Id.* ¶ 6a(3). It appears, therefore, that reckless conduct was expressly excluded from the scope of immunity if the incident involving reckless conduct was independently reported. In keeping with the FAA's Administrator's intent to encourage reporting, an incident involving reckless conduct could not be used for disciplinary purposes *unless* an independent report was received.

In our view the FAA, by promulgating Advisory Circular 00–46B, did not intend to *increase* the number of circumstances in which waivers of punishment would apply. Rather, the 1979 circular *decreases* the availability of waivers by allowing disciplinary action when incidents are independently reported.[4] Reckless conduct was not immune from disciplinary action under the 1975 and 1976 circulars, and we agree with the NTSB that the FAA did not intend to allow a waiver of punishment for reckless conduct under the 1979 circular. Thus, we conclude that the Administrator's interpretation of the circular is not clearly erroneous.

---

4. The addition to ¶ 9c(3) of the 1979 circular is further evidence of the intent to limit the availability of waivers:

> (3) The person has not been found in any prior FAA enforcement action to have committed a violation since the initiation of the ASRP of the Federal Aviation Act or of any regulation promulgated under that Act; . . .

Earlier circulars did not restrict the availability of waivers to first time offenders.

We next examine the language used in the 1979 circular to determine whether the phrase "inadvertent and not deliberate" excludes reckless conduct, and is therefore consistent with the interpretation of the Administrator. *Udall v. Tallman*, 380 U.S. at 16–18, 85 S.Ct. at 801–802.

### B. *The Meaning of "Inadvertent and Not Deliberate"*

■ Ferguson urges this court to conclude that the term "inadvertent" is synonymous with "not deliberate." In affirming the order of the ALJ, the NTSB defined the terms "inadvertent and not deliberate" to mean not reckless. The NTSB stated:

> The terms 'inadvertent' and 'not deliberate' are used in the conjunctive (rather than disjunctive) in the Advisory Circular. Therefore, for immunity to apply, not only must a violation be not deliberate, it must also be inadvertent. While it is undisputed that the violations were not deliberate, it is also clear that, under any reasonable definition, they were not inadvertent. "Reckless" connotes a substantially greater degree of lack of care than "inadvertence", as exemplified by the difference between simple negligence and gross negligence, and approaches deliberate or intentional conduct in the sense of reflecting a wanton disregard for the safety of others. Exclusion of reckless conduct from the immunity protection of the circular is also consistent with the history and intent of the ASRP.

Thus, in the view of the NTSB the meaning of the phrase inadvertant and not deliberate is consistent with the FAA Administrator's interpretation of the circular. We agree.

The parties do not dispute that Ferguson's conduct was not deliberate. Therefore, we must determine whether his conduct was inadvertent. Ferguson, as pilot-in-command of Western Airlines Flight 44, was required by Federal Aviation Regulations and company policy to perform certain duties: (1) to familiarize himself with all flight information. FAR § 91.5 (14 C.F.R. § 91.5); (2) to utilize available radio navigation aids to identify the airport before landing. Western Airlines Flight Operation Manual, ¶ 5.3.3.C; and (3) to land the aircraft himself until he accumulated 100 hours as pilot-in-command of a type aircraft. Western Airlines Flight Operation Manual ¶ 5.1.2.B. It is undisputed that he failed to comply with these regulations.

■ In each instance, Ferguson's failure to comply with the regulation was the result of a purposeful choice. If he had thoroughly examined the navigational chart before the flight, his hasty in-flight examination of the new route (depicted on the same chart) might have revealed the presence of the Buffalo Airport in the same path as the Sheridan Airport. He chose, however, not to familiarize himself with all flight information. If he had utilized his radio navigation aids, he could have positively identified the airport. He chose, however, not to persevere in his use of navigational aids. If he had flown the aircraft himself, he might have been more alert to the visual indications that he was landing at the wrong airport. He chose, however, to allow First Officer Bastiani to land the aircraft.

■ *Ballentine's Law Dictionary* defines "inadvertence" in the following manner: "The word includes the effect of inattention, the result of carelessness, oversight, mistake, or fault of negligence and the condition or character of being inadvertent, inattentive or heedless. Gross negligence is not inadvertence in any degree." It is evident that an inadvertent act is one that is not the result of a purposeful choice. Thus, a person who turns suddenly and spills a cup of coffee has acted inadvertently. On the other hand, a person who places a coffee cup precariously on the edge of a table has engaged in purposeful behavior. Even though the person may not deliberately intend the coffee to spill, the conduct is not inadvertent because it involves a purposeful choice between two acts—placing the cup on the edge of the table or balancing it so that it will not spill. Likewise, a pilot acts inadvertently when he flies at an incorrect altitude because he misreads his instruments. But his actions are not inadvertent if he engages in the same conduct because he chooses not to consult his instruments to verify his altitude.

In spite of the fact that Ferguson may not have consciously intended any particular consequences to occur as a result of his choice, he nevertheless made an election to act as he did. We agree with the NTSB's decision: "While it is undisputed that [Ferguson's] ... violations were not deliberate, it is also clear that, under any reasonable definition, they were not inadvertent."

Ferguson suggests that we should adopt a lay interpretation of inadvertent. In our view a lay interpretation of the phrase is consistent with a legal interpretation. *Webster's Dictionary* defines "inadvertent" as: "Not paying strict attention; failing to notice or observe; heedless; unwary." Clearly, Ferguson's conduct cannot fall within the ambit of this definition. Although his actions did not reflect the degree of deliberateness found in intentional misconduct, neither can they be found to be inadvertent. We hold that the NTSB did not abuse its discretion by determining that the scope of the 1979 circular does not allow a waiver of punishment for reckless conduct, and that the phrase "inadvertent and not deliberate" cannot encompass reckless conduct.

## IV. RECKLESS CONDUCT WITHIN § 91.9

Federal Aviation Regulation § 91.9 (14 C.F.R. § 91.9) states: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." The term "reckless," as used on § 91.9 has been interpreted to mean "conduct that demonstrates a gross disregard for safety when coupled with the creation of actual danger to life and property ...." *Administrator v. Understein*, NTSB Order EA–1644 (1981). Thus, in order to find that the NTSB abused its discretion, this court would need to decide that the findings of fact do not lead to the conclusion that Ferguson's conduct demonstrated: (1) a gross disregard for safety; and (2) a danger to life and property.

A gross disregard for safety occurs when a person engages in conduct that show a disregard for foreseeable consequences. *Administrator v. Understein*, NTSB Order EA–1644 (1981). Ferguson should have known that his conduct could result in harm to the safety of his passengers. The ALJ commented that Ferguson's failure to use navigational aids was "unjustified." Sound judgment should have dictated a verification of the airport. The NTSB indicated that Ferguson should have known that he was landing at the wrong airport because of the visual indications. VASI lights, which Ferguson knew were part of the Sheridan airport, were not visible. The Sheridan Flight Service Station relayed the information that another aircraft was in the traffic pattern, but Ferguson did not realize what he should have known—that he was landing at the wrong airport. Because the consequences of Ferguson's conduct were clearly foreseeable, the conclusion of the NTSB that Ferguson demonstrated a gross disregard for safety is not an abuse of discretion.

There is no question that Ferguson's conduct created an actual danger to life and property. The NTSB suggests several events that could have occurred as a result of Ferguson's conduct: (1) the hard landing and subsequent hard brake application could have caused the aircraft to swerve off the runway; (2) the landing gear could have collapsed if it had sunk into the ground near the runway; (3) a fire could have resulted if any of the fuel tanks had ruptured; and (4) the aircraft could have struck mountainous terrain because the flight was using the published elevation for Sheridan rather than Buffalo. Even though no actual injury resulted, the potential endangerment is sufficient to find reckless operation. *Administrator v. Stretar*, NTSB Order EA–1535 (1980).

Ferguson argues that emphasis should be placed on the fact that no accident, injury, or property damage occurred. He contends that "any act of inadvertence in light of its potential catastrophic consequences would constitute gross negligence or reckless conduct under the Administrator's theory." His contention is not accurate because an act of inadvertence, even one of potential catastrophic consequences, would not be reckless unless it was coupled with the requisite gross disregard for safety.

We hold that the NTSB did not abuse its discretion in drawing the conclusion that Ferguson should have known that he was landing at the wrong airport. Because Ferguson's conduct had clearly foreseeable consequences, it demonstrated a gross disregard for safety and created an actual danger to life and property. Thus, the conduct was reckless within the meaning of § 91.9.

## V. CONCLUSION

In summary, we hold that the NTSB did not abuse its discretion by determining that the scope of Advisory Circular 00–46B does not allow a waiver of punishment for reckless conduct, and that the phrase "inadvertent and not deliberate" cannot encompass reckless conduct. Furthermore, we hold that the NTSB did not abuse its discretion in drawing a conclusion from the findings of fact that Ferguson's conduct was reckless within the meaning of Federal Aviation Regulations § 91.9 (14 C.F.R. § 91.9).

The decision of the NTSB is AFFIRMED.