33 F.3d 58
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frederick K. DISTAD, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION; National Transportation
Safety Board, Respondents.
 No. 93-71050.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 1, 1994.*
Decided Aug. 19, 1994.
 
 Before: PREGERSON, BOOCHEVER, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Frederick Distad seeks reversal of an order of the National Transportation Safety Board ("NTSB" or "the Board") affirming a 30-day suspension of the airframe rating on his airman mechanic certificate. Distad claims that the NTSB order should be reversed due to numerous alleged substantive and procedural errors. We affirm.
 
 
 3
 The NTSB reviews certificate sanctions imposed by the Federal Aviation Administration ("FAA") pursuant to 49 U.S.C. app. Sec. 1429(a) (1988), to determine whether they are required by air safety and the public interest. Kolek v. Engen, 869 F.2d 1281, 1284 (9th Cir.1989). The NTSB reviews de novo any decision made by its administrative law judges ("ALJs") concerning certificate sanctions. Id. at 1283. Our review of the NTSB decision is more narrow, however. Reversal is warranted only when the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. Sec. 706(2)(A) (1988); Kolek, 869 F.2d at 1285. "The NTSB's factual findings are conclusive when supported by substantial evidence in the record." Essery v. Department of Transp., 857 F.2d 1286, 1288 (9th Cir.1988). Purely legal questions are reviewed de novo. Kolek, 869 F.2d at 1285.
 
 I. Substantive Complaints
 
 4
 Distad contends that the NTSB should have reversed the FAA Administrator's ("the Administrator") suspension of his airman mechanic's certificate due to substantive errors in the FAA's enforcement process.
 
 A. Regulations
 
 5
 Distad first argues that the Administrator cannot initiate an enforcement action where no regulatory standards and requirements have been established, and he claims that in his case, no applicable requirements or standards have been established. He claims that existing regulations do not specifically address the kind of repairs he did and that he therefore cannot be required to comply with them. Accordingly, he claims that the FAA's enforcement action against him should have been found to be arbitrary and capricious.
 
 
 6
 Distad contends that the FAA has not promulgated any regulatory standards and requirements for attaching wing skins to ribs and spars with countersunk/flat head rivets, and thus that it cannot find that he improperly made such attachments. The NTSB found, on the basis of uncontroverted testimony in the record, that FAA Advisory Circular ("AC") 43.13-1A applied to the type of riveting work Distad performed and established the applicable methods, techniques and practices acceptable to the FAA. This finding is supported by substantial evidence. See NLRB v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992), cert. denied, 113 S.Ct. 2995 (1993). The record contains testimony that AC 43.13-1A p 99.f applied to the kind of rivet driving work done by Distad (fashioning "bucktails") and no evidence to the contrary.
 
 
 7
 Pursuant to its finding that the FAA had established regulatory standards applicable to Distad's work, the Board concluded that, given the evidence of several bucktail defects in rivets installed by Distad, the Administrator had a sufficient basis for finding a violation of 14 C.F.R. Sec. 43.13(a) (1989). This finding is also supported by substantial evidence.
 
 
 8
 The Board also found that AC 43.13-1A p 99.d supported the Administrator's conclusion that 14 C.F.R. Sec. 43.13(a) had been violated. Distad contends that p 99.d refers only to rivet edge distances for sheet joints and not for wing skins to nose ribs. The record indicates that sheet joint riveting refers to the riveting together of two sheets of metal. Distad argues that the Advisory Circular refers only to riveting flat sheets of metal; however, testimony indicated that the riveting together of two formed sheets of metal, such as nose ribs, is also sheet joint riveting. Distad did not refute this testimony. Thus, considering the record as a whole, the NTSB's finding that p 99.d provided standards applicable to Distad's work was based on substantial evidence.
 
 
 9
 The Board's order affirmed the FAA determination that Distad violated 14 C.F.R. Sec. 43.13(b) (1989) as well as Sec. 43.13(a). Although the Board did not explicitly state the basis for this decision, the decision is supported by substantial evidence in the record. Section 43.13(b) states:
 
 
 10
 Each person maintaining or altering, or performing preventative maintenance, shall do that work in such a manner and use materials of such a quality, that the condition of the aircraft, airframe, aircraft engine, propeller, or appliance worked on will be at least equal to its original or properly altered condition....
 
 
 11
 14 C.F.R. Sec. 43.13(b). In this case, there was testimony in the record from an FAA aviation safety inspector specializing in airworthiness that the condition of the aircraft following Distad's repairs was less than its original or properly altered condition. Distad presented no evidence or witnesses to rebut the Administrator's case. Accordingly, the NTSB's determination that Distad had violated Sec. 43.13(b) was supported by substantial evidence. See Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.1991) (the substantial evidence standard requires the appellate court to review the administrative record as a whole, weighing the evidence that supports the agency's determination as well as the evidence that detracts from it).
 
 B. Proof of Safety Concerns
 
 12
 Distad next argues that the FAA suspension of his airman mechanic certificate should not have been upheld because there was no evidence that his allegedly noncomplying maintenance work adversely affected safety. We do not consider this argument because Distad failed to raise this issue in his appeal to the full Board. See 49 U.S.C. app. Sec. 1486(e) ("No objection to an order of the Board ... shall be considered by the [reviewing] court unless such objection shall have been urged before the Board ... unless there were reasonable grounds for failure to do so"); Reid v. Engen, 765 F.2d 1457, 1460-62 (9th Cir.1985). Distad was represented by his chosen representative at this hearing, and he has shown no grounds for his failure to raise this argument at that time.
 
 
 13
 We, therefore, reject Distad's substantive arguments for reversal of the NTSB's order affirming the 30-day suspension of the airframe rating on Distad's airman mechanic certificate and its findings that Distad violated 14 C.F.R. Secs. 43.13(a) and (b).
 
 II. Procedural Errors
 
 14
 Distad claims that the NTSB should have reversed the ALJ's affirmance of the FAA's decision due to numerous procedural errors he alleges the ALJ made during Distad's appeal of the FAA order. Our review of these arguments, in addition to being circumscribed by the deferential standard of review we apply to agency decisions, also "must take 'due account ... of the rule of prejudicial error.' " Kolek, 869 F.2d at 1286 (quoting 5 U.S.C. Sec. 706 (1982)). We can reverse the NTSB's order only for substantial errors in administrative procedure that prejudiced Distad. Id.
 
 A. Right to Present Affirmative Defense
 
 15
 Distad first argues that the ALJ deprived him of his right to present his defense by denying his motion to accept as an affirmative defense certain excerpts from FAA orders. The NTSB rejected this argument on two grounds. First, it found that the Administrator's decision to bring an enforcement action is outside the Board's scope of review. Second, it stated that the policy guidelines cited by Distad did not impose any limits on the Administrator's exercise of his discretion to initiate an enforcement action. We do not address the first ground because the second finding is clearly correct.
 
 
 16
 The NTSB found that the proffered excerpts did not provide a defense because the policy guidelines cited did not mandate daily education prior to enforcement, and in fact, the guidelines imposed no restrictions on the Administrator's exercise of prosecutorial discretion. It therefore concluded that the exclusion was proper. This interpretation of the agency's guidelines was not erroneous.
 
 
 17
 Distad argued that the FAA was required by its own internal orders to provide him with education and guidance in the form of daily instruction by an FAA inspector, before it could commence an enforcement action against him. Distad misreads and misquotes the order. FAA Order 8300.10, Ch. 210 Sec. 3(B)(1)(b) calls for inspectors "to become involved in [the agency's] education and counselling process through ... [d]ay-to-day contact with certificate holders." The meaning of this passage is not that inspectors should meet with each certificate holder each day as Distad suggests, but rather that inspectors should be in contact with some of the individuals who form the group of "certificate holders." Moreover, the education program forms a component of the FAA's Compliance and Enforcement policy. Nothing in its language limits initiation of enforcement actions.
 
 
 18
 FAA Order 2150.3A, Ch. 2 Sec. 201(c) provides that efforts to achieve compliance should be made by promoting understanding and awareness of the regulations, and it states that "[o]nly where these efforts for achieving voluntary compliance have failed should formal enforcement action be undertaken." Distad argues that no attempts at voluntary compliance were made prior to the commencement of the formal enforcement proceeding against Distad, in violation of this order. We agree with the NTSB that this passage does not limit the FAA's prosecutorial discretion. The order refers to a general scheme of informing and educating certificate holders; but it also calls for prompt enforcement to follow any discovered violation. In the very paragraph where efforts to achieve voluntary compliance through education are encouraged, the order refers to the fact that compliance can be compelled where necessary, presumably through enforcement actions. Moreover, the order expressly states that it is "intended to be an aid in the exercise of discretion...." Thus, the FAA did not limit its prosecutorial discretion by issuing Order 2150.3A. Enforcement may be initiated even where attempts at voluntary compliance have not been undertaken.
 
 
 19
 Accordingly, the statements proffered by Distad were properly found to provide him with no defense. The ALJ has authority to exclude irrelevant and extraneous information. And in any case, the exclusion did not prejudice Distad. The NTSB did not err in refusing to reverse the Administrator's decision on this basis.
 
 B. Suspension of Distad's Representative
 
 20
 Next, Distad argues that the NTSB improperly found harmless the ALJ's error in suspending his nonattorney representative, Glenn Wyatt, without a hearing pursuant to 49 C.F.R. Sec. 821.6(a). The NTSB based its determination on the fact that the suspension was in effect for a short period of time and that Distad's ability to present his defense was not adversely affected by the improper suspension. This determination is supported by substantial evidence. The record shows that Wyatt's suspension lasted only two weeks. During that two-week period, the only development in Distad's case was the FAA's filing of its answer to Distad's motion for an order directing the FAA to show cause why this case was treated as an exception to FAA orders, and the ALJ's decision on that motion. There is no indication in the record that Distad had any need of his representative during that period or that, absent the suspension, the ALJ's decision on his motion would have been any different. Thus, the NTSB's determination that the error was harmless is supported by substantial evidence.
 
 
 21
 C. Participation of the Administrator's Counsel
 
 
 22
 Distad argues that the ALJ committed reversible error by allowing the Administrator's counsel to participate in the proceeding even though the counsel's name and address had not been furnished, pursuant to 49 C.F.R. Sec. 821.6(d) (1989), and because no person was designated by the Administrator to receive service, pursuant to 49 C.F.R. Sec. 821.7(f) (1989). The NTSB refused to reverse on these grounds, finding them simply to be lacking in merit. Distad has made no showing that these insubstantial procedural errors prejudiced him in any manner. Thus, the NTSB's refusal to reverse on this ground was rational and within its discretion. See Kolek, 869 F.2d at 1286.
 
 D. Compelled Surrender of the Certificate
 
 23
 Distad contends that the NTSB and the FAA did not have the authority to require the physical surrender of his airman certificate. Section 1429(a) of 49 U.S.C. app. gives the Administrator the authority to suspend an airman mechanic certificate. The surrender of the suspended certificate is required by regulation. 14 C.F.R. Secs. 61.19(f), 65.15(c) (1989). The NTSB noted that it "has no independent authority to order the surrender of airman certificates." It stated, however, that should Distad refuse to comply with the regulatory requirement that a suspended certificate be surrendered, he could be subject to a separate enforcement action and subject to additional sanctions.
 
 
 24
 Distad's suggestion that the FAA's order should have been reversed because it included the requirement that the certificate be surrendered and stated that the suspension period would continue from the effective date of the order until the thirty days after the certificate was surrendered is without merit. The FAA does have the power to extend the duration of sanctions in order to achieve compliance with its regulations; Distad acknowledges his duty to comply with these regulations. 49 U.S.C. Sec. 1485(e). The fact that the FAA included the provision calling for the certificate's surrender in its "order" did not harm Distad in any apparent manner.
 
 F. Late Filing
 
 25
 Finally, Distad argues that the ALJ's decision should be reversed because he accepted the late filing by the Administrator's counsel of an opposition to Distad's motion to dismiss the complaint. The NTSB found that there was good cause for late filing of the answer to the motion because Distad's motion was served on the FAA's Office of Chief Counsel in Washington D.C. rather than on its Office of Assistant Chief Counsel in Anchorage, Alaska, which was handling the case and upon which all previous documents had been served by Distad. We will not disturb this finding.
 
 
 26
 Accordingly, Distad's claims that the NTSB should have reversed the ALJ for procedural failures are rejected.
 
 III. Conclusion
 
 27
 The NTSB's decision affirming the ALJ and FAA's determination that Distad violated Federal Aviation Regulations and affirming the suspension of his airman certificate is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3