Paul Joseph JANKA; Michael E. Newman, Petitioners,

v.

DEPARTMENT OF TRANSPORTATION, NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation Administration, Respondents.

No. 90–70012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1990.

Decided Feb. 7, 1991.

Leslie S. McAfee, Woodland Hills, Cal., for petitioners.

Harry S. Gold, Office of Chief Counsel, Federal Aviation Admin., Washington, D.C., for respondents.

Before WALLACE, Chief Judge, POOLE, Circuit Judge, and BREWSTER,* District Judge.

WALLACE, Chief Judge:

Janka and Newman appeal from a decision by the National Transportation Safety Board (Board). They argue that the Board lacked jurisdiction to review an administrative law judge's (ALJ) decision. They further argue that the Board's decision was arbitrary, capricious, and not supported by substantial evidence. Finally, they allege errors in Board procedures. We have jurisdiction over this timely petition pursuant to 49 U.S.C.App. § 1429(a). We deny the petition to review and affirm the Board.

## I

Janka and Newman were charged with violating Federal Aviation Regulation (FAR) 91.9, for operating an aircraft in a careless or reckless manner, and FAR 91.-65(a), for creating a collision hazard. *See* 14 C.F.R. §§ 91.9, 91.65 (1989). Janka was additionally charged with making an intentionally false logbook entry in violation of FAR 61.59(a). *See* 14 C.F.R. § 61.59 (1989). As a result of the violations, the

---

* Honorable Rudi M. Brewster, United States District Judge, Southern District of California, sitting by designation.

Federal Aviation Administration (FAA) Administrator revoked Janka's commercial pilot and flight instructor certificates, and Newman's private pilot certificate.

Janka and Newman both appealed the orders of revocation. Because the two cases arose out of the same incident, the appeals were consolidated. The ALJ dismissed all charges against Newman, and found that Janka had only violated FAR 91.9. He ordered Janka's commercial pilot license suspended for 30 days.

The FAA Administrator subsequently appealed the ALJ's decision to the full Board. The Board reversed the ALJ and revoked Janka's commercial pilot and instructor certificates, and ordered that Newman's certificate be suspended for six months. *Administrator v. Janka and Newman*, NTSB Order No. EA–3029 (1989).

## II

■ Janka and Newman first contend that the Board did not have jurisdiction over the appeal from the ALJ decision. They argue that the order of the ALJ amounts to an order of the Board itself, and that the Board may not review its own order. Under this rationale, the only avenue of appeal is directly to the court of appeals.

This argument is foreclosed by the clear language of the Administrative Procedure Act (APA). Under the APA, whenever a statute provides for an adjudication to be determined on the record after an opportunity for an agency hearing, the "presiding employee ... shall initially decide the case." 5 U.S.C. § 557(b); *see also* § 556(b)(3) (presiding employee may be an ALJ). However, the decision by the presiding employee does not become the decision of the agency if there is "an appeal to ... the agency within time provided by rule." *Id.* § 557(b). In that case, the agency is free to review the ALJ's decision, and has "all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." *Id.*

Pursuant to the APA, the Board has promulgated procedures for either party to appeal an ALJ's decision. 49 C.F.R. § 821.47 (1989). These provisions track the APA's requirements by giving the parties 10 days to appeal, and the Board 20 days to review, the ALJ's initial decision. *Id.* §§ 821.43, 821.47. The rules further provide that an ALJ decision is not reviewable by the appellate court while a Board appeal is pending. *See id.* § 821.43. When such an appeal is made, the decision of the ALJ is stayed pending the Board's decision, which becomes the final order reviewable by the appellate court. *Id.*

The APA clearly authorizes the Board to review the ALJ's decision, and we have previously reviewed a number of Board decisions in which the parties had appealed from an initial decision by an ALJ. *See Essery v. Department of Transportation, National Transportation Safety Board,* 857 F.2d 1286 (9th Cir.1988); *Reid v. Engen,* 765 F.2d 1457 (9th Cir.1985); *Ferguson v. National Transportation Safety Board,* 678 F.2d 821 (9th Cir.1982); *Hart v. McLucas,* 535 F.2d 516 (9th Cir.1976) (*Hart*). As these authorities indicate, the argument of Janka and Newman that the Board lacked jurisdiction to hear the appeal is without merit.

## III

■ Janka and Newman next argue that the Board abused its authority by reversing the ALJ's decision. The APA grants the Board plenary review of an ALJ's decision. 5 U.S.C. § 557(b). In contrast, our review of the Board's order is narrowly circumscribed. Unless the Board's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," we must affirm. 5 U.S.C. § 706(2)(A). Findings of fact made by the Board are conclusive when supported by substantial evidence in the record. 49 U.S.C.App. § 1486(e); *Kolek v. Engen,* 869 F.2d 1281, 1284–85 (9th Cir.1989) (*Engen*). Purely legal questions are reviewed de novo. *Id.* at 1285.

### A.

■ Janka contends that the Board erred by concluding that he violated FAR

61.59 by making false statements in his logbook. Janka claims that he could not have violated FAR 61.59, because he did not falsify the logbook with the intent to deceive the FAA. He urges us to affirm the ALJ's decision that there can be no violation without a finding of intent to deceive.

Both Janka and the ALJ misinterpret FAR 61.59. In *Hart*, we held that there are two distinct offenses contained in 61.59, one involving fraud and the other involving intentional falsity. 535 F.2d at 519. The charge against Janka involves the latter. In discussing the elements of each offense, we stated:

> the elements of intentional false statement for the purpose of § 61.59(a)(2) are the first three elements of fraud: falsity, materiality and knowledge. Thus, intentional false statement is a lesser included offense within fraud. Thus, for both offenses, the person making the false entry must know of such falsity. However, fraud requires at least one additional element, i.e., an intent to deceive.

*Hart*, 535 F.2d at 519. Under this test, the question of whether Janka intended to deceive is irrelevant. Rather, the elements of the intentional false statement violation are falsity, knowledge, and materiality.

Janka concedes that he knowingly entered false information in his logbook. He recorded that he gave one hour of dual instruction to Newman on August 8, 1986, but later claimed that the instruction had instead taken place in May. However, Janka argues that the Board erred by concluding that the false statement was material.

Recent decisions interpreting section 61.59 have held that a false statement is material if it "had the natural tendency to influence, or [was] capable of influencing" the FAA. *Cassis v. Helms*, 737 F.2d 545, 547 (6th Cir.1984) (*Cassis*); *see also Twomey v. National Transportation Safety Board*, 821 F.2d 63, 66 (1st Cir.1987). In *Cassis*, the petitioner submitted a logbook to the FAA to demonstrate that he had 1500 hours of flight time. Although he had truthfully logged 1500 hours, the logbook contained an additional 150 hours of ficti-

tious flight time. The petitioner argued that false logbook entries were not material because the truthful entries satisfied FAA flight time requirements. *Cassis*, 737 F.2d at 546. However, the Sixth Circuit rejected this argument, stating that

> the logbook in question is a permanent and cumulative record of the appellant's flight experience, [and] may be consulted when Cassis seeks to demonstrate compliance with other FAA flight experience requirements. The FAA, of course, is charged with promoting aviation safety. The FAA cannot meet this responsibility unless pilot logbooks are free of knowing misrepresentations of fact.

*Id.* at 547 (citation omitted).

We agree with the Sixth Circuit's definition of materiality. The false logbook entry is material if the statement was "capable of influencing" the FAA. *Id.* Applying this test, we hold that the Board's decision that the false entry was material is supported by substantial evidence.

Inspector Spencer testified that logbook entries are used to document flight experience necessary to obtain higher ratings or to show currency in a type of airplane. The Board relied on this testimony to find that the false entries had "the capability of influencing the FAA in regard to flight experience of both the ostensible instructor, Respondent Janka, and the recipient, Respondent Newman." In response, Janka argues that flight instruction actually took place, although it occurred in May rather than in August as stated in the logbook entry. He thus claims that the false entry was not material, because the date of training is incapable of influencing any agency decision.

The Board rejected Janka's explanation for the logbook entry, pointing out that "Janka provided no evidence to substantiate the earlier instruction, and, ultimately, Janka removed the entry from the logbook." The Board concluded that "the Administrator put on a case to establish that the logbook entry constitute[d] intentional falsification, and that case was not rebutted." In light of the Board's explicit rejection of Janka's defense, we need not decide

whether the logbook entry would be considered material if only incorrect as to date.

The Board applied the correct legal standard, and its factual findings underlying the determination of materiality are supported by substantial evidence. We therefore affirm the Board conclusion that Janka's intentional falsification of the logbook violated FAR 61.59.

### B.

■ Janka and Newman also argue that the Board erred by finding that their planes collided in mid-air on August 18. The finding of a mid-air collision was the basis for the Board's conclusion that petitioners violated FAR 91.9 and 91.65(a). The Board's factual findings are conclusive if supported by substantial evidence in the record. 49 U.S.C.App. § 1486(e).

The FAA began an accident investigation after Janka reported an in-flight structural failure of the left front elevator on his aircraft. Janka reported that the failure occurred while he was flying information with Newman, but denied that any contact occurred between the two planes. At the hearing, Janka theorized that the left elevator on his plane "collapsed spontaneously during normal flight." However, FAA Investigator Spencer disagreed, and opined that the only explanation for the elevator damage was a mid-air collision.

After considering the evidence, the Board rejected Janka's explanation, and found that a mid-air collision had occurred. There is substantial evidence to support this finding. Spencer testified that he inspected and photographed the damaged elevator, and observed a correlation between marks on the elevator, and marks on the wing tip of the plane flown by Newman. He demonstrated by photographs where rivets on the wing tip had scraped paint, and where yellow paint from the elevator had transferred onto the wing tip. Furthermore, he found that a black smudge appeared on the wing tip that "precisely" matched the shape of the elevator. FAA Inspector Brophy also agreed that the elevator damage was caused by a collision between the two aircraft.

The Board considered, but was not persuaded by, evidence that Janka and Newman offered to rebut the inference of a collision established by the correlated marks. The Board rejected the argument that paint samples taken from the planes did not match, "in light of the fact that the paint samples were taken and analyzed over a year after the incident." Moreover, the Board was not persuaded by the expert produced by Janka and Newman, who hypothesized that the elevator had collapsed spontaneously. The Board pointed out that the expert never examined the elevator, and that the expert could not establish that a fatigue failure would result in the elevator having a smooth bend while maintaining structural integrity.

The Board was presented with a variety of evidence that it was entitled to review de novo after the appeal from the ALJ's decision. 5 U.S.C. § 557(b). In considering this evidence, the Board made factual determinations and found that a mid-air collision had occurred. This finding is also supported by substantial evidence.

### C.

■ Janka and Newman also challenge the interpretation of FAR 91.65(a) adopted by the Board. They contend that because they were engaged in formation flight in accordance with FAR 91.65(b), they cannot be charged with creating a collision hazard under FAR 91.65(a). The FAA's interpretation of the regulations is entitled to a high degree of deference. *See Lambert v. FDIC,* 847 F.2d 604, 606 (9th Cir.1988).

■ Janka and Newman cite no authority for the proposition that when flying in formation, pilots are free from the obligation to avoid a collision hazard. The Board has previously held that formation flight allowed by section 91.65(b) and a section 91.65(a) violation are not mutually exclusive events. In *Administrator v. Thompson,* NTSB Order No. EA–2388 (1986), the Board affirmed the ALJ's finding of a 91.65(a) violation, even though the parties were flying in an arranged formation flight.

This interpretation of section 91.65(a) is reasonable. An agreement to fly in formation should not relieve pilots of the responsibility to avoid a collision hazard. The Board's determination that Newman and Janka violated FAR 91.65(a) is affirmed.

### IV

Finally, Newman and Janka challenge Board procedures. They contend that the Board erred by considering the testimony of one of its own investigators. They also allege that the Board deliberately spoiled evidence. Our review of Board procedures is "circumscribed by the deferential standard of review applicable to agency decisions." *Engen,* 869 F.2d at 1286. We may reverse only for "substantial errors in administrative procedure that prejudiced [the parties]." *Id.*

### A.

■ Janka and Newman rely on *Administrator v. Hill,* NTSB Order No. EA–2409 (1986), *aff'd, Hill v. National Transportation Safety Board,* 886 F.2d 1275 (10th Cir.1989), for their argument that the Board should be prohibited from hearing testimony from an investigator. In *Hill,* the Board stated that it "frowns on the use of Board investigators as witnesses because of the desirability of maintaining as complete a separation as possible between the accident investigations ... and the enforcement proceedings...." *Id.* at 16–17. The Board concluded that under the circumstances of the case, the investigator's testimony should have been disallowed for policy reasons. *Id.*

A close reading of *Hill* reveals that the Board stopped short of prohibiting all testimony from Board investigators. Rather, the Board stated that "under different and more compelling circumstances ... the testimony might be allowed." *Id.* at 17 n. 9. Among the circumstances contemplated by the Board were those in which the investigator's testimony "would impeach that given by another witness." *Id.*

This case falls squarely within the exception left open in *Hill.* Here, the witness complained of, Investigator Pollack, testified in rebuttal only. The purpose of Pollack's testimony was to impeach the assertions of Janka and Newman concerning the inadequacy of the Board's investigation, and the condition of the elevator immediately after the incident.

The Board did not violate the policy of *Hill* by permitting Pollack to testify in rebuttal. There are no other grounds for concluding that the Board abused its discretion by considering this evidence. Therefore, we need not consider whether this testimony had any affect on the Board's ruling. *See* 5 U.S.C. § 706 (courts must take "due account ... of the rule of prejudicial error").

### B.

■ We also reject the claim of Janka and Newman that the FAA and the Board deliberately withheld evidence. Inspector Spencer testified that the FAA has no authority to retain personal property once the investigation is completed. Hence, after his final examination of the damaged elevator, he returned it to the owner of the plane. Spencer also testified that petitioners never requested an opportunity to examine the elevator. Similarly, Inspector Pollack discarded the paint samples taken from the planes because he believed that they were unimportant. Thus, there seems to be no support for the allegation that the FAA or the Board deliberately spoiled evidence.

PETITION DENIED AND BOARD AFFIRMED.