Robert K. JOHNSON, Petitioner,

v.

NATIONAL TRANSPORTATION
SAFETY BOARD,
Respondent.

No. 91–3295.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1992.
Decided Nov. 13, 1992.

David Mathews (argued), Carmell, Char-
one, Widmer, Mathews & Moss, Chicago,
Ill., Warren Kaston, Milwaukee, Wis., for
petitioner Robert K. Johnson.

Dina Clayborn, Peter J. Lynch, Kathleen
A. Yodice (argued), F.A.A., Washington,
D.C., Jeanette B. Daubaras, F.A.A., Des
Plaines, Ill., Harry S. Gold, F.A.A., En-
forcement Proceedings Branch, Washing-
ton, D.C., for respondent National Transp.
Safety Bd.

Before CUDAHY, EASTERBROOK and
RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Appellant Robert Keith Johnson was the pilot-in-command of a USAir express flight from Dayton to Cincinnati. The copilot on that flight, who flew the plane during the entire flight, had a blood alcohol level of .14 about an hour after the plane had landed. Consequently, the Administrator of the Federal Aviation Administration (FAA) revoked Mr. Johnson's commercial pilot certificate. After a hearing to determine Mr. Johnson's accountability under the Federal Aviation Regulations, the Administrative Law Judge (ALJ) modified the Administrator's order by reducing the penalty from revocation to a four-month certificate suspension. On review, the National Transportation Safety Board (NTSB) reinstated the original revocation of Mr. Johnson's pilot certificate; Mr. Johnson then filed this petition for review. Because we determine that there is substantial evidence on the record to support the Board's findings of fact and that the penalty imposed was not arbitrary and capricious, we affirm.

# I

## BACKGROUND

### A. *Facts*

On March 7, 1991, Robert Keith Johnson was the commanding pilot of a USAir express flight from Dayton to Cincinnati. The flight was Mr. Johnson's third of the evening and his scheduled copilot for that flight was James Hoskins. Ron Williams, a station agent working that evening, testified that, while Mr. Hoskins was completing necessary cargo forms for the flight, he noticed liquor on Mr. Hoskins' breath. Tr. 27, R. 200. When he allegedly smelled the alcohol, Mr. Williams was outdoors at the bottom of the aircraft stairs. Mr. Williams filed a report with the airline detailing what he had observed. The aircraft

departed on schedule, apparently before Mr. Williams' report was channeled to persons with authority to act upon it. Concerning the smell, Mr. Williams later testified that he "was able to tell what it was. It wasn't overbearing, but it was the scent of alcohol." Tr. 30, R. 203.

The flight was carrying five passengers in addition to the crew. As commanding pilot, Mr. Johnson assigned Mr. Hoskins to fly the aircraft during the thirty-minute flight. The aircraft landed in Cincinnati, on schedule and without incident. Because of Mr. Williams' report, two airport police were on hand in Cincinnati to administer alcohol detection tests to Mr. Johnson and Mr. Hoskins. One of the officers testified that, upon entering the room where Mr. Hoskins and Mr. Johnson were waiting, he "[i]mmediately ... noticed the odor of alcoholic beverages." Tr. 104, R. 277. The officer further testified that the smell of alcoholic beverages was "very evident on ... [Mr. Hoskins'] breath ... [and that his] eyes were watery and diluted." Tr. 114, R. 287. The second officer testified that he "noticed a strong odor of alcohol." Tr. 139, R. 312. The officers administered several field sobriety tests to Mr. Hoskins and Mr. Johnson. Mr. Hoskins was unable to count backwards from thirty-nine, recite the alphabet, or balance while walking heel-to-toe. He was able to stand successfully on one foot for thirty seconds. Mr. Johnson successfully completed all of the tests administered. Finally, the officers administered a preliminary breath test. Mr. Johnson's breath test registered 0.00 percent alcohol. Mr. Hoskins' breath test registered 0.14 percent alcohol.[1]

### B. *Agency Proceedings*

On May 21, 1991, the Administrator of the FAA issued an emergency order revoking Mr. Johnson's commercial pilot certificate.[2] Mr. Johnson was charged with violating §§ 91.13(a) and 91.17(b) of the Feder-

---

**1.** The Federal Aviation Regulations forbid any person from acting as a crewmember while he has .04 or more percent by weight of alcohol in their blood. 14 C.F.R. § 91.17(a)(4). The agency has noted that consumption of even a small quantity of alcohol negatively affects an individ-

ual's "judgement, coordination, performance and reaction time." 46 F.R. 38,481 (July 27, 1981).

**2.** Mr. Hoskins' pilot certificate was also revoked by the FAA, but is not at issue in this appeal.

al Aviation Regulations. Sections 91.13(a) and 91.17(b) provide:

> § 91.13 **Careless or reckless operations.**
>
> (a) No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
>
> § 91.17 **Alcohol and Drugs.**
>
> (b) Except in an emergency, no pilot of a civil aircraft may allow a person who appears to be intoxicated or who demonstrates by manner or physical indications that the individual is under the influence of drugs (except a medical patient under proper care) to be carried in that aircraft.

14 C.F.R. §§ 91.13(a) & 91.17(b) (1992). Mr. Johnson appealed the Administrator's order and a hearing was held before ALJ Joyce Capp, on July 1, 1991. The ALJ issued an order modifying the Administrator's order by dismissing the § 91.17(b) charge and reducing Mr. Johnson's penalty to a four-month certificate suspension. Specifically, the ALJ found that there was not sufficient evidence to establish that Mr. Johnson was aware that Mr. Hoskins had been drinking.[3] Nonetheless, the ALJ concluded that given the evidence presented, Mr. Johnson's failure to notice and report Mr. Hoskins' drinking before turning the controls of the aircraft over "showed the poorest of judgement." ALJ Oral Initial Decision and Order, at 7 (July 1, 1991). Accordingly, she found a license sanction appropriate. However, she reduced the revocation to suspension because she believed Mr. Johnson was less culpable than Mr. Hoskins and should receive a lesser sanction. Both Mr. Johnson and the Administrator filed appeals of the ALJ's decision to the full Board. On August 8, 1991, the Board issued an opinion affirming both the emergency order of revocation and the ALJ's decision, except for the penalty reduction, which it reversed. Consequently, the original revocation of Mr. Johnson's pilot certificate was reinstated.

## II

### ANALYSIS

#### A. *Standard of Review*

■ Our review of the decision of the National Transportation Safety Board is narrow. We shall uphold its decision if it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *see Janka v. Department of Transp.*, 925 F.2d 1147, 1149 (9th Cir.1991); *Essery v. Department of Transp.*, 857 F.2d 1286, 1288 (9th Cir.1988); *Aman v. FAA*, 856 F.2d 946, 951 (7th Cir.1988). Section 1006(e) of the FAA provides that the FAA's "findings of facts ..., if supported by *substantial evidence*, shall be conclusive." 49 U.S.C. § 1486(e) (1988) (emphasis supplied); *accord Janka*, 925 F.2d at 1151. We do not weigh the evidence or evaluate the witnesses' credibility. *Hill v. National Transp. Safety Bd.*, 886 F.2d 1275, 1278 (10th Cir. 1989). Rather, our task is simply to determine whether the agency could fairly and reasonably find the facts as it did. *Chritton v. National Transp. Safety Bd.*, 888 F.2d 854, 856 (D.C.Cir.1989). Additionally, we note that, as the agency charged with administering the Act, the FAA is "entitled to substantial deference." *Aman v. FAA*, 856 F.2d 946, 952 (7th Cir.1988) (citing *United States v. Rutherford*, 442 U.S. 544, 553, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979)). In *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966), the Supreme Court provided guidance for applying these standards in the administrative agency context:

> [S]ubstantial evidence [is] "such evidence as a reasonable mind might accept as adequate to support a conclusion." ... This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

---

**3.** Although the ALJ dismissed the § 91.17(b) charge, she repeatedly made reference to the fact that she believed Mr. Johnson was aware that Mr. Hoskins had been drinking. In choosing what she believed was an appropriate sanc-

tion, she noted: "I do think a message should get out that this conspiracy of silence and pilots protecting other pilots has got to stop." ALJ Oral Initial Decision and Order, at 7 (July 1, 1991).

. . . .

These policies are particularly important when a court is asked to review an agency's fashioning of discretionary relief. . . . By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.

*Id.* at 619–21, 86 S.Ct. at 1026–27 (citations omitted). With these legal standards in mind, we proceed to the substance of Mr. Johnson's appeal.

B. *Findings of the Agency*

1.

■ Mr. Johnson initially argues that, because the FAA exonerated him from section 91.17(b), which specifically proscribes a pilot from carrying any person on the aircraft who appears intoxicated, it was an abuse of discretion simultaneously to find that his conduct was careless enough to support the revocation of his pilot certificate under what he characterizes as the more general provisions of section 91.13(a). Mr. Johnson submits that "[i]t is unreasonable, and contrary to the intent of the FAA as expressed in its own regulations, to construe a general prohibition of misconduct to include conduct that is specifically addressed by other regulations." Mr. Johnson cites no authority supporting this theory and we cannot accept his assertion that the agency's discretion is cabined in such a manner. The two sections address significantly different situations. Section 91.17(b) prohibits a pilot from *transporting* a person who appears intoxicated. The Board affirmed the ALJ's dismissal of this charge because the record did not support the allegation that Copilot Hoskins appeared to be intoxicated. By contrast, section 91.13(a) places a much different obligation on the pilot. It requires that he not *operate* the aircraft in a careless or reckless manner. This "general" obligation, the Board quite reasonably concluded, encompasses the obligation of the pilot-in-command to notice the physical manifestations of members of the crew that might

indicate they are unfit to carry out their duties. This obligation indeed may be termed "general," but it is necessarily so. The pilot-in-command of an aircraft assumes an awesome responsibility for the safety not only of the passengers but of the countless people over whom the aircraft will fly on its journey.

2.

■ Alternatively, Mr. Johnson challenges the Board's determination that he should have inquired further as to the copilot's fitness for duty. He argues that the facts of record do not support the Board's conclusion that he should have known of the copilot's impairment. This submission is without merit. Mr. Johnson testified that he was not aware that Mr. Hoskins had been drinking. Although the ALJ did refer to her personal belief that Mr. Johnson actually knew that Mr. Hoskins had been drinking, the Board's final order did not rely upon that finding. Instead, both the ALJ and the Board, relying upon section 91.13(a), held that Mr. Johnson was careless and reckless in allowing Mr. Hoskins to take the controls *either* after he became aware that Mr. Hoskins had been drinking *or* before he ascertained that Mr. Hoskins was in full capacity of his abilities. The Board based its determination that Mr. Johnson was careless primarily upon the testimony of the airline agent who reported the incident to the airport authorities and the two police officers who investigated the report in the Cincinnati airport. In response, Mr. Johnson presented evidence that: other persons who came into contact with Mr. Hoskins did not notice he had been drinking; Mr. Hoskins frequently wore an alcohol-based cologne; the sense of smell varies among people; and Mr. Hoskins had alcoholic tendencies, which often include the ability to hide their drinking from other persons.

It is not our function to substitute our judgment for the credibility determinations of the Board. As long as its conclusions are supported by substantial evidence, the Board may permissibly make inferences from circumstantial evidence. *Erickson v.*

*National Transp. Safety Bd.,* 758 F.2d 285, 288 (8th Cir.1985). We cannot say that there is an absence of substantial evidence on the record to support a Board determination that a reasonably diligent commanding pilot would have noticed that Mr. Hoskins had been drinking and would have withheld the flight controls.

## C. *Penalty Imposed by the Agency*

■ Mr. Johnson argues that, even if he should have realized or did in fact realize that Mr. Hoskins had been drinking, the penalty imposed was arbitrary and capricious in light of his comparative culpability. Mr. Johnson contends that his behavior was "at worst, negligent," while Mr. Hoskins' actions were intentional. Accordingly, he argues that revoking his pilot certificate and stripping him of his ability to earn a living improperly equates his behavior with that of Hoskins. We cannot accept Mr. Johnson's contention that the Board abused its discretion in assigning the same sanction to both Mr. Hoskins and Mr. Johnson. Section 91.3(a) of the FAA provides:

> § 91.3 **Responsibility and authority of the pilot in command.**
>
> The pilot in control of the aircraft is directly responsible for, and the final authority as to, the operation of that aircraft.

14 C.F.R. § 91.3(a) (1992). Although Mr. Johnson was not himself intoxicated, it is undisputed that he turned over the flight controls to Mr. Hoskins who had a blood alcohol level of .14 shortly after the aircraft was landed in Cincinnati.[4] Thus, the NTSB was well within its discretion holding Mr. Johnson to the highest standards of safety for both his own actions and those of persons over whom he had direct supervision. As the Board wrote:

**4.** The Administrator presented expert testimony that having a blood alcohol level of .14 when tested, Mr. Hoskins would have to have had a blood alcohol level between .17 and .19 when the aircraft left Dayton under his control. Tr. at 166.

**5.** Mr. Johnson received his pilot certificate in 1973 and has had only one citation from the FAA during the 19 years he has been licensed.

In our view, the cockpit is no place to indulge uncertainties over a crewmember's full capacity to perform all required duties, and an ATP certificate holder serving as captain of a commercial flight who does not reflexively recoil from the possibility of entrusting the safety of his passengers and aircraft to a crewmember whose judgment and skill may be diminished by alcohol use neither appreciates the seriousness of operating while impaired nor understands the public safety obligations of his command.

Petitioner's Br. at 15.

Mr. Johnson also invites our attention to his exemplary flight record[5] and to the fact that there were no aggravating factors surrounding the March 7, 1991 flight, which was landed without incident. As an initial matter, we again note the great discretion that Congress granted the FAA to administer its regulations. The Eighth Circuit has articulated this point well. In upholding the revocation of a pilot certificate, which it noted was a "harsh sentence," the court explained: "Had we the power to determine the penalty, we might favor suspension. Nevertheless, the strong policy concern for public safety requires that the Board be given a wide range of discretion in imposing sanctions." *Erickson v. National Transp. Safety Bd.,* 758 F.2d 285, 290 (8th Cir.1985).[6] Moreover, "[p]roof of actual danger is unnecessary, for the regulation[s] prohibit any careless or reckless practice in which danger is inherent." *Roach v. National Transp. Safety Bd.,* 804 F.2d 1147, 1157 (10th Cir.1986), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1732, 100 L.Ed.2d 195 (1988) (quoting *Haines v. Department of Transp.,* 449 F.2d 1073, 1076 (D.C.Cir. 1971)).

The citation resulted in a two-week suspension for neglecting to enter maintenance work in his flight log. Petitioner's Br. at 1.

**6.** *See also Hard v. Civil Aeronautics Bd.,* 248 F.2d 761, 764 (7th Cir.1957), *cert. denied,* 355 U.S. 960, 78 S.Ct. 543, 2 L.Ed.2d 534 (1958) ("Nothing we have found in the Act manifests a legislative intent to hobble [the] agency in its exercise of discretion.").

The courts that have reviewed the severity of sanctions chosen by the Board have consistently concluded that the FAA is empowered to sanction actions that pose safety risks, as well as actions that ultimately result in harm to passengers. *See Hill v. National Transp. Safety Bd.*, 886 F.2d 1275 (10th Cir.1989) (potential for pilot conduct to endanger safety is all that is required to support FAA order of suspension of pilot certificate). Accordingly, the Board did not abuse its discretion in declining to give dispositive weight to the fact that no actual accident occurred on March 7, 1991. The Board was on solid ground in treating the event as one which potentially and unacceptably endangered the lives of the passengers and crew aboard. It is not an abuse of discretion to conclude that flying an aircraft while impaired is inherently dangerous conduct. Nor is it an abuse of discretion to conclude that the commanding pilot has an absolute, nondelegable duty to ascertain the readiness of the copilot. The Board is not constrained to impose serious sanctions on pilots only when tragedy occurs. Congress has delegated to the agency wide discretion to take reasonable action to avert preventable tragedies. This discretion extends both to removing culpable crew members *and* to taking administrative actions to encourage responsible supervision by commanding pilots.

### III

### CONCLUSION

The judgment of the National Transportation Safety Board is affirmed.

AFFIRMED.