8 F.3d 30
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank Wayne SUE, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation
Administration, Respondents.
 No. 93-70456.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 2, 1993.*
Decided Sept. 20, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges, and TANNER, Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Frank Wayne Sue ("Sue") appeals from an order of the National Transportation Safety Board ("NTSB") revoking his commercial pilot and medical certificates. We have jurisdiction under 49 U.S.C. app. §§ 1486(a) and 1903(d). We affirm.
 
 BACKGROUND
 
 4
 Sue is a professional crop duster who also holds a single engine seaplane certificate. On December 22, 1989, the Administrator of the Federal Aviation Administration ("FAA") revoked Sue's commercial pilot and aviation medical certificates for violations of the Federal Aviation Regulations ("F.A.R."), C.F.R. Title 14. The FAA based the revocation on two distinct sets of offenses: (1) Sue's intentionally false statements on his 1987, 1988, and 1989 medical certificate applications, in violation of F.A.R. § 67.20(a)(1) (1993); and (2) Sue's operation of a seaplane on September 4, 1989 in which he flew below the required altitude and operated the plane without possession of the required pilot, medical, and registration certificates, in violation of F.A.R. §§ 61.3 (1993), 91.27(a) (1989), 91.79(c) (1989), and 91.9 (1989).[1]
 
 
 5
 Sue appealed the revocation of his certificates to the NTSB. After a hearing, an administrative law judge ("ALJ") found that Sue had committed the violations, but modified the sanction to an eleven-month suspension. Both parties appealed to the NTSB, which upheld the ALJ's factual findings and reinstated the revocation. Sue timely appealed to this court.
 
 STANDARD OF REVIEW
 
 6
 We must affirm the NTSB's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Janka v. Department of Transp., 925 F.2d 1147, 1149 (9th Cir.1991) (quoting 5 U.S.C. § 706(2)(A)). The Board's findings of fact are conclusive when they are supported by substantial evidence in the record. Id. The ALJ's credibility determinations are given great deference. Silver v. United States Postal Serv., 951 F.2d 1033, 1043 (9th Cir.1991).
 
 DISCUSSION
 1. Intentional False Statements
 
 7
 F.A.R. § 67.20(a)(1) prohibits the making of a "fraudulent or intentionally false statement on any application for a medical certificate under this part." The medical certificate application form (Form 8500-8) contains a section entitled "Medical History," which inquires whether an applicant has, or has ever had, several listed conditions. Two of the listed "conditions" (21v and 21w) concern traffic and other convictions; the rest are related to medical illnesses. ER B. Although he had three convictions for driving under the influence, Sue answered "no" to questions 21v and 21w on his 1987, 1988, and 1989 applications. The NTSB found that Sue's actions violated F.A.R. § 67.20(a)(1).
 
 
 8
 The elements of an intentional false statement are falsity, materiality and knowledge. See Hart v. McLucas, 535 F.2d 516, 519 (9th Cir.1976) (construing the identical provision regarding applications for pilot certificates, F.A.R. § 61.59(a)(2)). All parties agree that Sue's negative answer to the traffic conviction question was false. Sue argues, however, that the statement was not "material" because alcohol-related traffic convictions do not preclude an individual from receiving a medical certificate.
 
 
 9
 We disagree. "[A] false statement is material if it 'had the natural tendency to influence, or [was] capable of influencing,' the FAA." Janka, 925 F.2d at 1150 (quoting Cassis v. Helms, 737 F.2d 545, 547 (6th Cir.1984)). Although alcohol-related traffic convictions do not automatically disqualify an applicant, they are relevant to the FAA's decision to grant a license. As the FAA argues, such convictions may indicate conditions which are themselves disqualifying, such as alcoholism or a personality disorder. See, e.g., F.A.R. §§ 67.13(d)(1)(a), (c) (1993). See also Administrator v. Glynn, 2 N.T.S.B. 375 (1973) (record of convictions would, at the very least, have required further study of applicant's medical qualifications).
 
 
 10
 Sue also contends that the ALJ incorrectly invoked a negligence standard, rather than the knowledge standard required by Hart. The ALJ made the following findings:
 
 
 11
 In any event, the issue under 67.20 is whether there was an intentional or knowing falsification.... Then, was it made knowingly, that is with knowledge of its falsity.... I think he did know when I questioned him, I draw attention to it, that what they were asking on the form he should have said yes to. So I think as a matter of technicality I do find a violation of 67.20, in that there was a knowing, that is he knew or should have known that the response required was a yes and, therefore, I must find that there was a violation of Section 67.20(a)(1), in that there was an intentionally false or knowingly false statement on the application. I do not find any fraudulent intent.
 
 
 12
 ER F at 184-86 (emphasis added). Although the ALJ's use of the phrase "knew or should have known" was improper, it is clear from the remainder of his remarks that he found that Sue had the actual knowledge required under § 67.20. We give great deference to the ALJ's credibility determination that, despite Sue's protestations to the contrary, he knew his answers were false.
 
 
 13
 Sue also argues that it is a violation of due process to penalize him for his false statement because the medical certificate application form is confusing and ambiguous. As support, Sue cites United States v. Manapat, 928 F.2d 1097 (11th Cir.1991), which held that Form 8500-8 was too ambiguous as a matter of law to support a conviction for "knowingly and willfully" making a false statement under 18 U.S.C. § 1001. Manapat, however, arose in the context of a criminal prosecution, with its additional due process protections and higher burden of proof. By contrast, Sue's license was revoked in a civil administrative proceeding. The Manapat court recognized the differences between these proceedings:
 
 
 14
 Furthermore, our holding does not preclude the government from refusing to grant a certificate, or from revoking a certificate already granted, if the applicant falsely responds to the government's requests for information.... We merely hold that the government may not provide someone with a confusing and ambiguous form and then prosecute when the answers are inaccurate.
 
 
 15
 Id. at 1102 (emphasis added).
 
 2. Seaplane Violations
 
 16
 Sue's violation of § 67.20(a)(1), standing alone, provides sufficient basis for revoking his certificates. F.A.R. § 67.20(b). In addition, however, the NTSB found that on September 4, 1989, Sue: (1) made two flights under a bridge in violation of applicable altitude requirements; (2) operated a plane in a careless manner so as to endanger life or property; and (3) operated a plane without possession of his pilot, medical, and registration certificates. Sue contends that there was not substantial evidence to support these findings. We disagree.
 
 
 17
 F.A.R. § 91.79(c) provides that, "[e]xcept when necessary for takeoff or landing," an aircraft may not be operated over open water within 500 feet of a person, vessel, vehicle, or structure. Sue admitted to making one flight under the bridge in violation of these altitude requirements, but argued that the flight was necessary for landing because the surrounding terrain was rough, wooded, and therefore unsafe for a potential crash landing. Given his crop dusting experience at low altitudes, Sue testified that he felt the under-bridge landing to be safer. Based on his own perusal of the exhibits and the testimony of several park rangers and an FAA safety inspector, however, the ALJ found that the flights under the bridge were not necessary for takeoff or landing. ER F at 178-79. This finding is supported by substantial evidence, and we will not disturb it.
 
 
 18
 Sue also argues that there was insufficient evidence to support the ALJ's finding that he made a second flight under the bridge. The ALJ based this conclusion on the testimony of an eyewitness, despite the fact that the seaplane seen by the witness was alleged to have been a different color than Sue's plane. The ALJ discounted the color disparity, noting that the witness was also driving his car during the short time he observed the plane. ER F at 175. The testimony was corroborated by one of the rangers who responded to a complaint about a plane flying beneath the bridge. In reaching his conclusion, the ALJ discounted the testimony of Sue's passengers, who stated that there was only one flight under the bridge. Because of their "relationships" with Sue, the ALJ considered these witnesses to be less credible than the "disinterested" rangers. Because the finding was based on substantial evidence, we affirm.
 
 
 19
 Sue next argues that the evidence of these under-bridge flights was insufficient to establish a violation of F.A.R. § 91.9, which prohibits the operation of an aircraft "in a careless or reckless manner so as to endanger the life or property of another." Sue argues that the passengers were safer flying under the bridge than over the surrounding terrain, that the plane could not conceivably have caused any damage to the bridge, and that there were no boats in the surrounding water at the time. Under § 91.9, "[i]t is sufficient to show careless operation which is potentially or inherently dangerous." Cobb v. National Transp. Safety Bd., 572 F.2d 202, 203 n. 3 (9th Cir.1977).[2] The NTSB has held that "[f]light within the distances proscribed by section 91.79 is inherently unsafe." Administrator v. Karlovich, 3 N.T.S.B. 3678 (1981). The ALJ found that Sue's flight had endangered his passengers, the bridge, and passengers of other vessels. ER F at 180-81. We agree with the NTSB that the evidence supported the conclusion that Sue's flight under the bridge posed an unnecessarily high risk of danger, at least to his passengers and to the bridge itself.
 
 
 20
 Finally, Sue challenges the ALJ's finding that he operated the plane without having his pilot and medical certificates in his possession, in violation of F.A.R. § 61.3(a) and (c), and without having the aircraft registration certificate on board, in violation of F.A.R. § 91.27(a)(2). Sue admits that the pilot and medical certificates were not in his possession on the day in question. He contends, however, that the registration certificate was in fact on board, but that no park ranger asked to see it. Although one of the rangers did not recall asking for the registration certificate (ER A at 39), two others testified that Sue told them that he did not have the registration on board. ER A at 53, 66. The ALJ determined that the two rangers were more credible, and we will not disturb this finding.
 
 
 21
 Thus, the violations were established by substantial evidence.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 F.A.R. section 91 (14 C.F.R. Part 91) was reorganized in 1990. All citations to Part 91 refer to the sections in effect at the time of the violations (i.e., 1989)
 
 
 [2]
 But see Essery v. Department of Transp., 857 F.2d 1286, 1290 (9th Cir.1988) (noting that FAA must show that the potential harm was unacceptably high or that the pilot's judgment was deficient). The ALJ's findings also met this threshold