8 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William A. MEILI, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD; Federal Aviation
Administration, Respondents.
 No. 91-70756.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 11, 1993.
Decided Sept. 28, 1993.
 
 Before FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 William A. Meili appeals from the National Transportation Safety Board's ("Board") decision affirming the Federal Aviation Administration's ("FAA") amended order suspending Meili's commercial pilot certificate for 30 days. Administrator v. Meili, Order No. EA-3340 (July 16, 1991), recon. denied, Order No. EA-3420 (Oct. 25, 1991). The Board had jurisdiction under 49 U.S.C.App. § 1429(a). We have jurisdiction over this timely appeal under 49 U.S.C.App. § 1486. We affirm.
 
 FACTS AND PROCEEDINGS
 
 3
 The FAA's order, which served as the complaint in this matter, alleged that on February 17, 1988, Meili operated Civil Aircraft N421AA within the San Diego Terminal Control Area ("TCA") without prior authorization from the air traffic controller ("ATC"), in violation of Federal Aviation Regulation ("FAR") 91.90(b)(1)(i), and operated the aircraft in a careless manner so as to endanger the life or property of another, in violation of FAR 91.9. See 49 C.F.R. §§ 91.90(b)(1)(i), 91.9 (1988), recodified as 49 C.F.R. §§ 91.131, 91.12 (1990).
 
 
 4
 In an oral decision, the administrative law judge ("ALJ") determined the alleged FAR violations occurred, and affirmed the FAA's order suspending Meili's commercial pilot certificate for 60 days. Subsequently, the FAA moved to reduce the sanction from 60 to 30 days to conform with a revised Compliance and Enforcement Bulletin.
 
 
 5
 Meili appealed the ALJ's order to the Board. The Board granted the FAA's motion to amend the sanction to 30 days, adopted the ALJ's findings as its own, and affirmed. The Board denied Meili's petition for reconsideration of its decision, but granted Meili's motion to stay the sanction pending review by this court.
 
 DISCUSSION
 A. Standard of Review
 
 6
 The Administrative Procedure Act grants the Board plenary review of the ALJ's decision. 5 U.S.C. § 557(b). "In contrast, our review of the Board's order is narrowly circumscribed." Janka v. Department of Transp., 925 F.2d 1147, 1149 (9th Cir.1991). We must uphold the Board's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Essery v. Department of Transp., 857 F.2d 1286, 1288 (9th Cir.1988).
 
 
 7
 The Board's findings of fact are conclusive if supported by substantial evidence in the record. 49 U.S.C.App. § 1486(e); Janka, 925 F.2d at 1149; Kolek v. Engen, 869 F.2d 1281, 1284-85 (9th Cir.1989). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); Richardson v. Perales, 402 U.S. 389, 401 (1971). We will uphold the ALJ's credibility determinations unless they are inherently incredible or patently unreasonable. Dohmen-Ramirez v. Commodity Futures Trading Comm'n, 837 F.2d 847, 856 (9th Cir.1988).
 
 
 8
 Purely legal questions are reviewed de novo. Essery, 857 F.2d at 1288. We must give deference to the FAA's interpretation of its own regulations. Id. 857 F.2d at 1289; Janka, 925 F.2d at 1151. "We may reverse only for 'substantial errors in administrative procedure that prejudiced [the parties].' " Janka, 925 F.2d at 1152 (quoting Kolek, 869 F.2d at 1286.
 
 B. Substantial Evidence
 
 9
 After considering the evidence, the Board found Meili operated an aircraft that made an unauthorized incursion into the San Diego TCA. There is substantial evidence to support this finding.
 
 
 10
 The following evidence, either undisputed or, where conflicting, deemed the most credible by the Board's adoption of the ALJ's credibility determinations, supports the finding of Meili's unauthorized incursion into the San Diego TCA. The ATC Timothy Koob testified in his deposition, admitted into evidence, that on February 17, 1988, he observed an unauthorized aircraft incursion in Section E (altitude range 5,800-12,500 feet), a final aircraft approach course located within the boundaries of the San Diego TCA. Koob was bringing America West Flight 860 into a descent from 8,000 to 5,000 feet when he observed the unauthorized aircraft.
 
 
 11
 Koob testified the unauthorized aircraft was squawking a 1200 VFR code and he "tagged" the unauthorized aircraft on his radar scope. At his hearing before the ALJ, Meili conceded he was squawking a 1200 code.
 
 
 12
 Koob instructed America West to stop its descent. After America West leveled off at approximately 7,500 feet, Koob testified the America West pilot reported the unauthorized aircraft was a beige, light twin aircraft and the aircraft was below him, in Section E. Meili acknowledged his aircraft has twin engines.
 
 
 13
 Koob kept the tag on the unauthorized aircraft and tracked its flight path. When Koob observed the aircraft was heading toward Brown Field, he called Brown Control Tower by telephone and asked if Brown Control Tower was in contact with an aircraft approximately four miles east of Brown Field. Brown Control Tower responded affirmatively.
 
 
 14
 Koob called Brown Control Tower again, when the aircraft was approximately two miles east of Brown Field. He asked Brown Control Tower to ask the pilot of the unauthorized aircraft what his altitude was. Brown Control Tower relayed that the pilot was approximately 500 feet above ground level. Koob testified the unauthorized aircraft had an altitude encoder and the information appearing on his radar scope corresponded with the altitude information relayed by Brown Control Tower. Meili admits his altitude encoder was operating.
 
 
 15
 Koob further testified he asked Brown Control Tower to ask the pilot of the unauthorized aircraft his aircraft's registration number. Brown Control Tower relayed that the number was N421AA. Koob also testified he asked Brown Control Tower to ask the pilot of the unauthorized aircraft to identify itself. Koob observed an identification ("ident") flash on his radar scope. This "ident" corresponded with the target that he had been tracking.
 
 
 16
 Robert E. Turner, the supervisor on duty at the San Diego Terminal Radar Approach Control ("TRACON") at the time of the unauthorized aircraft incursion, testified he received a call from Meili and Meili identified himself as the pilot of N421AA. Turner testified that Meili "... said something to the effect that he was a lot further west than he had thought he was originally, and that when he realized he was in the TCA he made a descending left 360 or cork screw to the left to exit the TCA."
 
 
 17
 Terrell Deering, a Quality Assurance and Training Specialist at San Diego TRACON, testified he made a certified cassette re-recording of the air traffic control master tape containing: (a) the communications between Koob and America West; (b) the telephone conversation between Koob and Brown Control Tower during which Brown Control Tower identified Meili's aircraft and relayed its altitude; and (c) Koob's request to Brown Control Tower to have the unauthorized aircraft "ident." Deering testified the tape does not contain the communications between Brown Control Tower and Meili because those communications would have been recorded at Brown Control Tower, not at the San Diego TRACON.
 
 
 18
 The Board considered, but was not persuaded by, Meili's testimony that he never penetrated the TCA, he never said he made a turn to "get out of the TCA," and he never gave the "ident" requested by Brown Control Tower, because although he heard the request, he told Brown Control Tower he was too busy landing his aircraft.
 
 
 19
 The Board also found the minor discrepancy between Koob's initial statement (and mapping), prepared on the day of the incident, that he observed the unauthorized aircraft in Section E, and Koob's subsequent deposition statement, reported over one year after the incident, that he observed the unauthorized aircraft "15-18 miles east of San Diego, in section E," was insufficient to raise doubts about the reliability of Koob's observations, even though 15-18 miles east of San Diego is an area outside of San Diego TCA. The Board concluded that "[t]he statement prepared on the day of the incident and the flight path which the ATC specialist drew placing respondent's aircraft in Section 'E' is simply more accurate than the approximation he gave at the beginning of his deposition testimony, over one year after the incident."
 
 
 20
 A reasonable trier of fact would accept the foregoing relevant evidence as adequate to support the Board's finding that Meili flew his plane within the TCA without prior authorization from the ATC and operated his plane in a careless manner so as to endanger the life or property of another. The Board's decision is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See Janka, 925 F.2d at 1149.
 
 
 21
 C. Nonretention of Brown Control Tower Tape Recording
 
 
 22
 Meili asserts that the FAA's failure to comply with its own procedures, by not producing a re-recording of the tape containing his communications with Brown Control Tower, prejudiced his defense and constituted destruction of evidence. See FAA Compliance and Enforcement Manual, Order 2150.3 (1988) (substantially similar to 1980 version). Meili argues that had the FAA retained a tape of his communications with Brown Control Tower, he would have been able to prove that he told Brown Control Tower that he was too busy landing his aircraft to send the requested "ident," and that with this evidence he could have established that his aircraft was not the TCA violator.
 
 
 23
 We reject this argument. The FAA's failure to retain the tape did not prejudice Meili. There was sufficient evidence, apart from the tape and despite what Meili contends it would have established, to support the Board's findings. The evidence is overwhelming that what Meili contends would have been established by the tape is incredible.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3