8 F.3d 809
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Bruce F. CHAILLE, Petitioner,
v.
NATIONAL TRANSPORTATION SAFETY BOARD, Respondent.
 No. 93-1001
 United States Court of Appeals,
First Circuit.
 October 29, 1993
 
 PETITION FOR REVIEW OF AN ORDER OF NATIONAL TRANSPORTATION SAFETY BOARD
 Bruce F. Chaille on brief pro se.
 Peter J. Lynch, Manager, Susan S. Caron, Attorney, Federal Aviation Administration, and National Transportation Safety Board, on brief for respondents.
 NTSB
 AFFIRMED
 Before Selya, Boudin and Stahl, Circuit Judges.
 Per Curiam.
 
 
 1
 Petitioner seeks review of an order of the National Transportation Safety Board ("NTSB") reversing a decision by the Administrative Law Judge ("ALJ"). Petitioner contends that the NTSB's decision arbitrarily disregarded its own precedent, and was inconsistent with Federal Aviation Regulations. For the reasons that follow, we affirm the NTSB's decision.
 
 
 2
 Petitioner, a licensed transport pilot, was operating the controls of a DC-9 on September 29, 1987, as second-in-command of Eastern Flight 603, when it landed at William B. Hartsfield Atlanta International Airport. The plane's captain was operating the radios at the time. Although the aircraft was cleared by Air Traffic Control ("ATC") to land on Runway 26 left, petitioner instead landed on Runway 26 right without seeking or receiving an amended clearance. While no injuries were reported, testimony at the subsequent hearing showed that the Eastern flight landed perpendicular to, and "right by [the] nose" of Delta flight 657, which had been cleared to take off from Runway 26 right. On October 18, 1988, the Administrator of the Federal Aviation Administration ("Administrator") issued an order suspending petitioner's pilot's certificate for twenty days[1] for violation of Federal Aviation Regulations ("FAR"), 14 C.F.R. §§ 91.9, 91.87(h)
 
 
 3
 (1987).[2] Petitioner appealed the order to the NTSB and a hearing was held before an Administrative Law Judge. The ALJ reversed the Administrator's order, accepting petitioner's defense that he had rightfully relied on the direction of the captain of the aircraft. The Administrator appealed and the full board of the NTSB reversed the ALJ's decision, affirming the Administrator's suspension order.
 
 
 4
 At the hearing, the parties stipulated to most of the operative facts, including the aircraft's clearance to land on Runway 26 left, its acknowledgment of the clearance, and its wrongful landing on Runway 26 right.[3] The remaining issue was whether, in light of the evidence, petitioner should be absolved of the violation by virtue of Coleman, doctrine.
 
 
 5
 Administrator v. Coleman, 1 N.T.S.B. 229 (1968). In Coleman the NTSB held that a pilot at the controls had a right to rely on his copilot's confirmation of the pilot's incorrect understanding of an ATC clearance.
 
 
 6
 At the time of the landing here, as we have said, the captain of the aircraft was operating the radios. Petitioner, at the controls, was also monitoring the radio transmissions through an overhead speaker, in conformance with FAA and airline safety procedures. The overhead speaker was in working order and petitioner had no difficulty hearing the transmissions. The ATC audiotape of the radioed exchanges, stipulated by the parties to be accurate, reflects that during the approach the plane was instructed four times to land on Runway 26 left. Each of these instructions was separately acknowledged by the captain, who twice repeated it verbatim. While petitioner initially testified that the he did not personally overhear an ATC clearance for Runway 26 left, he later admitted that he did hear the correct clearance, simultaneously with the Delta transmission, and became alarmed. Background evidence showed that 98-99% of all prior landings, and 100% of petitioner's prior landings at the subject airport, had been on Runway 26 right, not Runway 26 left. The ALJ summarized the relevant events as follows:
 
 
 7
 Petitioner obviously, even though he was wrong, through force of habit thought he was to land on 26 right. When he saw and heard the communication relative to the Delta airliner that was waiting on the taxiway on 26 right, and then heard they were to land on 26 left, then [petitioner] queried [the] Captain ... as to where [they] were supposed to land. The testimony is clear and unequivocal, the Captain told him to land on 26 right which he, the First Officer, proceeded to do.
 
 
 8
 Administrator v. Chaille, Dkt. No. SE 9696, N.T.S.B. Oral Initial Dec. at 151 (March 30, 1990).
 
 
 9
 The ALJ concluded that while the case was "close," under the circumstances petitioner should be given the "benefit of the doubt" and excused from verifying the clearance with [ATC].
 
 
 10
 Ordinarily I would buy that petitioner should have called ATC to verify the clearance], but here they were well on their way to a few thousand feet above the runway. And in addition to that, it is obvious that the Eastern pilots had flown together on many occasions . There was great admiration and respect on the part of [petitioner] for [the] Captain ...
 
 
 11
 Chaille, N.T.S.B. Oral Initial Decision at 151.
 
 
 12
 The NTSB, on the other hand, viewed the applicability of Coleman differently:
 
 
 13
 It is clear from Coleman and the cases that follow it that if the pilot not handling radio communications does not hear or understand a transmission, he may, in certain circumstances, rely on the advice of the pilot working the radio as to the transmission's content. However the Administrator argues correctly, we think, that this should not be extended to situations where the pilot who seeks to rely on the radio operator has reason to doubt the accuracy of the advice he is given by the other pilot.
 
 
 14
 In the interest of safety, the degree of confusion in the cockpit that necessarily results when the pilot operation the controls has heard two conflicting characterizations of the landing clearance, should prompt a request for clarification from ATC. Force of habit and respect are not factors to be considered by a pilot determining something as important as a landing clearance.
 
 
 15
 Administrator v. Chaille, N.T.S.B. ORDER NO. EA-3643, 1992 NTSB LEXIS 176 AT * *4, 6 (AUG. 12, 1992
 
 
 16
 Petitioner argues that the NTSB's failure to apply the Coleman defense toe the facts of his case was an arbitrary departure from its own prior holdings in Coleman and two later cases, Administrator v. Thomas, 3 N.T.S.B. 349 (1977), AND Administrator v. Crawford, 1986 NTSB LEXIS 246 (May 8, 1986). While the facts in each case are unique, petitioner points out that, in all three cases, the NTSB determined that a pilot operating an aircraft had reasonably relied on the officer operating the radio.
 
 
 17
 "Under our very narrow standard of review, we must uphold the [NTSB's] decision if it is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " Hite v. NTSB, 991 F.2d 17, 20 (1st Cir. 1993) (quoting 5 U.S.C. § 706(2)(a)). "We must defer to the wisdom of the agency provided its decision is reasoned and rational, and even 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " Chritton v. NTSB, 888 F.2d 854, 856 (D.C. Cir. 1989) (quoting Bowman Transp. Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974)).
 
 
 18
 Applying this standard, we think the NTSB reasonably rejected petitioner's interpretation of the agency's prior decisions. As respondent's brief contends, the facts in each of the three cited cases differ in a critical respect from those presented by petitioner's case. In the present case, the NTSB concluded that radio transmissions which petitioner personally overheard provided reason for him to question the accuracy of the captain's statement. Petitioner therefore should have confirmed the correct runway clearance with the controller. By contrast, in Coleman and Thomas the pilot at the controls knew of no reason to doubt the accuracy of the clearance information relayed by the officer operating the radio. In Coleman the pilot incorrectly understood a single radio transmission relating to altitude. He relied on his copilot's confirmation, in circumstances where the practice was to avoid further radio communication with departure control. In Thomas, the pilot's reliance on a first officer's information provided an affirmative defense where, although the ATC instruction was transmitted, it was not received or heard by any of the three officers in the cockpit at the time. Likewise, in Crawford, the pilot had no known reason to doubt that his first officer had accurately followed instructions by relaying a crucial communica- tion to the ATC.
 
 
 19
 Thus, the NTSB's decision here not to extend the Coleman affirm- ative defense to absolve a pilot who heard at least one of the four correct transmissions but failed to follow through, was based on a fair reading and distinction between this case and the agency's own precedents.[4]
 
 
 20
 We also reject petitioner's argument that the NTSB's decision ar- bitratily imposed upon him an individual burden of communication that violated other regulations, and could not have been safely accomplishe d under the circumstances. The two regulations cited by petitioner are inapposite. The first, 14 C.F.R. § 121.533(e) (1987), is inapplicable on its face. The other, 14 C.F.R. § 91.3(a) (1987), as interpreted by the NTSB, does not give the Captain final authority to override an ATC clearance in the absence of an in-flight emergency. Administrator v. Jesch, N.T.S.B. Order No. EA-3425, slip op. at 6 (1991). No in-flight emergency or hazard was claimed here. Petitioner testified, moreover, that when he heard the transmission that led him to query the captain, he was ready to conduct a go-around, presumably to prevent a wrong landing. In these circumstances, the NTSB could fairly conclude that petitioner had time to safely obtain a clarification from ATC.
 
 
 21
 The agency's interpretation of safety regulations is entitled to a high degree of deference from this court Janka v. NTSB, 925 F.2d 1147, 1151 (9th Cir. 1991). Congress has delegated to the agency the responsibility to ensure flight safety and avert preventable tragedies. Hite v. NTSB, 991 F.2d at 20; Johnson v. NTSB, 979 F.2d 618, 623 (7th Cir. 1992); Rochna v NT SB, 929 F.2d 13, 14 (1st Cir.), cert. denied, 112 S. Ct. 305 (1991). This court cannot substitute its own judgment for that of the agency, especially where the issue, the relative safety of a pilot's in-flight operations, is peculiarly within the agency's expertise. We review only to determine whether the NTSB's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706; Hite, 991 F.2d at 20. We see no abuse here.
 
 
 22
 Finally, there is no merit to petitioner's contention that the NTSB mischaracterized both his hearing testimony and the ALJ'S initial decision. Petitioner's testimony contained inconsistencies, a circumstance mirrored in the ALJ's oral summary of the evidence. The NTSB noted the inconsistencies and, contrary to petitioner's characterization, followed the ALJ's finding that, in effect, petition er's admissions were more credible than his denials. Based on our own reading of the transcript, the NTSB's characterization of the evidence was fair and reasonable; and it was supported by substantial evidence. Agency factual findings will not be disturbed on appeal so long as they rest on substantial evidence. Throckmorton v. NTSB, 963 F.2d 441, 443 (D.C. Cir. 1992); McCarthney v. Busey, 954 F.2d 1147, 1153 (6th Cir. 1992); Janka, 925 F.2d at 1151; Chritton, 888 F.2d at 856; cf. Chirino v. NTSB, 849 F.2d 1525, 1529-30 (D.C. Cir. 1988) (upholding NTSB'S reversal of ALJ's credibility determination as not arbitrary or capricious). Accordingly, the petition for review is denied, and the order below is affirmed.
 
 
 
 [1]
 The penalty was waived because petitioner had reported the incident promptly through the Aviation Safety Reporting Program, but the judgment remains on his record
 
 
 [2]
 14 C.F.R. §§ 91.9, 91.87 (1987) (CURRENTLY 14 C.F.R. §§ 91.13(A)), 91.129(h)) state in relevant part:
 § 91.9 Careless or reckless operation.
 No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another.
 § 91.87
 (h) Clearances required. No person may, at any airport with an operating control tower, operate an aircraft on a runway or taxiway, or takeoff or land an aircraft, unless an appropriate clearance is received from ATC
 
 
 [3]
 The parties stipulated to the following facts relating to clearance and acknowledgment for use of Runway 26 left ('26L'):
 [D]uring the approach, the terminal arrival radar H (TAR-H) controller assigned the flight to Runway 26L, and that Eastern 603 acknowledged the transmission, [2[the arrival radar V (AR-V) controller cleared Eastern 603 for a visual approach to Runway 26L and that the clearance was acknowledged, [3[the ATL automated terminalinformation system (ATIS) was transmitting information that Runway 26L was the appropriate runway in use for landing, and that the information was received by Eastern 603, [4[the local tower controller cleared Eastern 603 to land on Runway 26L and that Eastern 603 acknowledged the clearance, [5[other aircraft landing at the time were being cleared to land on Runway 26L.
 Administrator v. Chaille, N.T.S.B. Order No. EA-3643, 1992 NTSB LEXIS 176 at * *2-3 (Aug. 12, 1992).
 
 
 [4]
 Respondent attached to its brief copies of several other recent NTSB opinions where, in analogous circumstances, the NTSB rejected a Coleman or similar defense, finding that the pilot's reliance on another officer or crew member was not justified. While we need not discuss these other cases here, we wish to acknowledge the thorough, careful and persuasive analysis of the issues presented in respondent's brief